**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005843
25-SEP-2015
08:53 AM**

NO. CAAP-13-0005843

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
TINA FORD, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0757)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, and Reifurth and Ginoza, JJ.)

Defendant-Appellant Tina Ford appeals from the November 27, 2013 Judgment of Conviction and Sentence ("Judgment") entered by the Circuit Court of the First Circuit ("Circuit Court").[1] Ford was convicted by a jury of Methamphetamine Trafficking in the Second Degree, in violation of Hawaii Revised Statutes ("HRS") § 712-1240.8 (Supp. 2007).[2]

---

[1]    The Honorable Karen S.S. Ahn presided.

[2]    The statute provides, in relevant part:

> (1)    A person commits the offense of methamphetamine trafficking in the second degree if the person knowingly distributes methamphetamine in any amount.
>
> (2)    Methamphetamine trafficking in the second degree is a class B felony . . . .
>
> (3)    . . . [A] person convicted of methamphetamine trafficking in the second degree shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment of not less than one year and not greater than four years and a fine not to exceed $10,000,000[.]

Haw. Rev. Stat. § 712-1240.8.

Ford challenges the validity of her grand jury indictment, the adequacy of the Circuit Court's jury instructions at trial, and the sufficiency of evidence offered by the State of Hawai'i in support of the conviction. We affirm.

I.    BACKGROUND
      A.    The Drug Transaction

Ford's conviction arose out of an incident occurring on October 29, 2008, during which she and a woman she described as an "associate"—Dorcelyn Nohealani Amina—distributed crystal methamphetamine ("meth") to Honolulu Police Department ("HPD") Officer Khan Le, who was assigned as an undercover narcotic officer.

On that date, Officer Le testified, he arrived at the Hawaiian Colony hostel on Ala Moana Boulevard, in plainclothes with $50 in pre-marked U.S. currency to investigate "narcotics purchase[s], dealing, [and] smoking" at that location. He entered the small parking lot and stated out loud: "Everyone's dry," and "[a]nybody get," which meant that he was looking to purchase narcotics. Ford approached Officer Le and asked what he was looking for. Officer Le replied that he wanted "a 40 of clear," which meant that he wanted to buy a $40 bag of meth. After asking if Officer Le was with the HPD, and believing that he was not, Ford contacted her "source" to get some meth. Officer Le told Ford, "I don't want to get rip[ped] off[;] I don't want to get bunk[,]" which meant that he did not want to receive fake drugs. Although Ford assured Officer Le that "you not going to get rip[ped] off, you not get bunk]" Ford testified at trial that her intention at the time was "to bunk him."

Once the pair entered the courtyard of the hostel, Ford made a telephone call and a few minutes later, Amina, who introduced herself to Officer Le as "Aunty Noe," appeared with the meth. Officer Le handed two $20 bills directly to Amina. Officer Le testified that Amina "in turn, handed [Ford] two small ziploc baggies containing substances resembling methamphetamine." Ford testified that Amina "thr[e]w down two papers on the ground, and [Ford] picked [them] up . . . ." It is undisputed that Ford

2

kept one of the two baggies for herself and directly passed the other to Officer Le. All parties agree that the crystalline substance inside the baggies "[l]ooked similar to" real meth. HPD Criminalist Michelle Shinsato, who testified at trial as an expert in drug identification and identification of controlled substances, tested the baggie's contents and confirmed that it contained 0.324 grams of a substance that, to a reasonable degree of scientific certainty, contained meth.

B.    Ford's Indictment by Grand Jury

On May 19, 2009, a grand jury convened to consider evidence against Ford and Amina.[3/] At the start of the proceeding, a member of the grand jury explained to the independent grand jury counsel ("GJC") and the other members of the grand jury that she was familiar with Ford, did not "really like" her, and could not be fair and impartial toward her:

> [PROSECUTOR]: We're going to move on to case number 2, and this is State versus Dorcelyn Amina and Tina Ford.
>
> Before we proceed with the case, I understand that there may be a juror that may know somebody involved in this case, so I'm going to call independent counsel at this time. Thank you.
>
> [GJC]: Morning. May the record reflect independent counsel.
>
> Who is it that had -- okay. And who do you know?
>
> A GRAND JUROR: Tina Ford is my boyfriend's ex sister-in-law.
>
> [GJC]: Your boyfriend's ex sister-in-law?
>
> A GRAND JUROR: Yeah.
>
> [GJC]: And . . .
>
> A GRAND JUROR: I know her. I don't really like her, so I don't think I should be here. (Laughter.) At least I'm honest, okay?
>
> [GJC]: Your relationship with her --
>
> A GRAND JUROR: I know her.
>
> [GJC]: Will it cause you not to be a fair and impartial juror?

---

[3/]    On May 31, 2012, the eve of trial, Amina entered a no contest plea to all charges against her, and she does not join Ford in this appeal.

A GRAND JUROR: Yeah. (Laughter.)

[GJC]: I think it's better that you not --

A GRAND JUROR: Yeah.

[GJC]: You can leave. (Laughter.)

A GRAND JUROR: At least I'm being honest. I want to hear this, but . . .

[PROSECUTOR]: Okay. . . . we'll proceed with the rest of case number 1.

The grand juror was excused before the subsequent hearing and did not participate in the deliberations that resulted in Ford's indictment. The remaining members of the grand jury, on the other hand, heard testimony from Officer Le (about the details of the undercover operation) and Criminalist Shinsato (about the test results identifying the contents of the plastic baggie sold to Officer Le as containing meth).

Subsequently, Ford filed a Motion to Dismiss Indictment for Grand Juror Misconduct and argued that the grand jury proceeding leading to her indictment was "tainted" by the grand juror's statements. The Circuit Court denied Ford's motion and issued the following relevant findings of fact ("FOFs") and conclusions of law ("COLs") on July 22, 2010:

FINDINGS OF FACT

. . . .

3. The court reviewed both the transcript and the tape of the grand jury presentation, and has considered the words spoken, the tone of voices used, and demeanor of persons appearing on the tape. The grand juror at issue was not shown.

4. The grand jury panel involved in this case had been assembled early in 2009 and would have served until the end of 2009.

5. Some or most of the laughter may have been generated as a response to the grand juror's tone of voice, not by the content of her representations. That grand juror gave no specific reason for her general opinion that she did not like defendant Ford, although one reasonable inference is that Ford was, but no longer is, the sister-in-law of the grand juror's current boyfriend.

6. The state, represented by the Department of the Prosecuting Attorney, played no role in the events at issue. The brief discussion at issue occurred between the grand juror and the [GJC].

7. There was sufficient evidence for the grand jury to have found probable cause to support the return of an

indictment against both defendants on all counts.

. . . .

CONCLUSIONS OF LAW

. . . .

2.    The discussion between the grand juror and independent counsel does not amount to the type of prejudice required, to wit, that without the discussion at issue, the grand jury would not have returned the indictment.  See [State v.] Scotland . . , 58 Haw. [474,] 477-78[, 572 P.2d 497, 499-500 (1977) (per curiam)].  In the absence of proof, the court will not assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment; here, the court cannot find proof of prejudice against either defendant arising in the grand jury from the brief discussion at issue.

3.    If the illegal or improper testimony clearly appears to have improperly influenced the grand jurors despite the presence of sufficient evidence amounting to probable cause to indict, the defendant is entitled to a dismissal.  Id. at 477[, 572 P.2d at 499 (citing People v. Barbour, 273 N.Y.S. 788 (Ct. Gen. Sess. 1934); State v. Joao, 53 Haw. 226, 491 P.2d 1089 (1971))].  Here, the brief discussion at issue does not clearly appear to have improperly influenced the grand jury.

On appeal, Ford challenges FOFs 5 and 7 and COLs 2 and 3.

C.    Trial

Ford was the only defense witness called.  Ford's testimony differed from that of the State's witnesses mostly where it concerned her state of mind.  At the close of the defense's case, Ford's counsel made a second motion for a judgment of acquittal based on sufficiency of the evidence, which the Circuit Court again denied.

Before closing arguments, the Circuit Court issued twenty-one instructions to the trial jury.  The instructions did not address the "procuring agent defense," and neither party objected to the instructions as given.  The trial jury subsequently rendered a unanimous verdict finding Ford guilty as charged.

On November 27, 2013, the Circuit Court issued the Judgment of Conviction and Sentence, which ordered Ford to pay monetary assessments up to $700.00 and sentenced her to ten years of incarceration pursuant to HRS § 712-1240.8(3), with credit for time served.  Ford timely appealed.

5

## II.  POINTS OF ERROR

On appeal, Ford alleges the following three points of error:

(1)  "The court abused its discretion in denying the defense's motion to dismiss the indictment based on the misconduct of the grand juror";

(2)  "The court plainly erred in failing to instruct the jury on the procuring agent defense"; and

(3)  "The court erred in denying Ford's motion for judgment of acquittal," in which she argued that the State failed to prove a "knowing distribution."

## III.  STANDARDS OF REVIEW

*Motion to Dismiss Indictment for Grand Jury Misconduct*

"A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion." *State v. Akau*, 118 Hawai'i 44, 51, 185 P.3d 229, 236 (2008) (citation omitted).

The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. The burden of establishing abuse of discretion is on [the] appellant, and a strong showing is required to establish it.

*State v. Wong*, 97 Hawai'i 512, 517, 40 P.3d 914, 919 (2002) [(per curiam)] (citation omitted).

*State v. Hinton*, 120 Hawai'i 265, 273, 204 P.3d 484, 492 (2009) (original brackets omitted); *see State v. Griffin*, 126 Hawai'i 40, 49, 266 P.3d 448, 457 (App. 2011).

*Unrequested Jury Instruction Not Given*

In the case of unrequested jury instructions that are raised for the first time on appeal:

HRS § 701-115(2) [(1993)] and its accompanying Commentary place the burden of production on the defendant to present evidence of the specified fact or facts going to the defense. In other words, the defendant must have come forward at trial with credible evidence of facts constituting the defense, unless those facts were supplied by the prosecution's witnesses. Further, "credible evidence" in this context means that the circuit court should have concluded, based on the record that existed at trial, that the evidence "offered reasonable grounds for being believed," i.e., that "a reasonable juror could harbor a reasonable doubt" as to the defendant's guilt, and should have given the unrequested . . .

jury instruction.  Failure to give the . . . jury instruction
under these circumstances constitutes plain error.

. . . .

[S]uch an error "seriously affects the fairness,
integrity, or public reputation of judicial proceedings," and
it would "serve the ends of justice" and "prevent the denial
of fundamental rights" [it].  [*State v.*] *Kikuta*,
125 Hawaiʻi[ 78,] 95, 253 P.3d[ 639,] 656 [(2011) (citation
omitted)].  .  .  .  [W]here the omission of the . . . jury
instruction constitutes plain error, it shall be a basis for
reversal of the defendant's conviction only if an examination
of the record as a whole reveals that the error was not
harmless beyond a reasonable doubt.

*State v. Taylor*, 130 Hawaiʻi 196, 207-08, 307 P.3d 1142, 1153-54
(2013) (footnotes omitted) (discussing the "mistake of fact" jury
instruction, which, like the "procuring agent" instruction,
involves a non-affirmative defense).

## Sufficiency of the Evidence

"When a conviction is challenged based on the
sufficiency of the evidence, the test on appeal is not whether
guilt is established beyond a reasonable doubt, but whether there
was substantial evidence to support the conclusion of the trier
of fact."  *Griffin*, 126 Hawaiʻi at 56, 266 P.3d at 464 (quoting
*State v. Richie*, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998))
(internal quotation marks omitted).  "Substantial evidence is
credible evidence which is of sufficient quality and probative
value to enable a person of reasonable caution to support a
conclusion."  *Id.* (quoting *Richie*, 88 Hawaiʻi at 33, 960 P.2d at
1241) (internal quotation marks and ellipsis omitted).

## Circuit Court's FOFs and COLs

We review the Circuit Court's pretrial FOFs under the
clearly erroneous standard.  *State v. Ramos-Saunders*, 135 Hawaiʻi
299, 302, 349 P.3d 406, 409 (App. 2015) (citing *State v. Naititi*,
104 Hawaiʻi 224, 233, 87 P.3d 893, 902 (2004)).  We review the
Circuit Court's pretrial COLs, however, de novo.  *Id.* (citing
*Naititi*, 104 Hawaiʻi at 233, 87 P.3d at 902).  As such, "'[a COL]
that is supported by the trial court's [FOFs] and that reflects
an application of the correct rule of law will not be
overturned.'"  *Id.* (quoting *Dan v. State*, 76 Hawaiʻi 423, 428,

879 P.2d 528, 533 (1994)).

IV. DISCUSSION

  A.  Ford has not shown that the exchange between the grand
      juror and the GJC biased the grand jury.

      In Ford's first point of error, she claims that "the
misconduct *by the grand juror* in demeaning Ford's character
before the other grand jurors prejudiced Ford's right to a fair
and impartial grand jury." (Emphasis added.)  Citing *State v.
Scotland*, 58 Haw. 474, 572 P.2d 497 (per curium) (1977), Ford
argues that the exchange between the grand juror and the GJC
qualifies as "illegal or improper testimony [that] clearly
appears to have improperly influenced the grand jurors despite
the presence of sufficient evidence amounting to probable cause
to indict [her] . . . ."  *Id.* at 477, 572 P.2d at 499 (citations
omitted).  We reject Ford's first point of error and find that
the indictment was valid.

      Assuming for the sake of argument that the grand
juror's statements to the GJC were improper, Ford does not
show—and the record does not reflect—that those statements biased
the rest of the grand jury and impaired the grand jury's ability
to review the case against Ford impartially and independently.
*See State v. Pulawa*, 62 Haw. 209, 217, 614 P.2d 373, 378 (1980)
(noting that, in determining whether to dismiss an indictment,
the ultimate question is whether the comments at issue have
biased the grand jury and impaired its ability to review the case
against the accused impartially and independently); *cf. Bank of
Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)
("[Generally, a] court may not dismiss an indictment for errors
in grand jury proceedings unless such errors prejudiced the
defendants.").  In Hawai‘i, misconduct only warrants dismissal of
an indictment where the controverted statements "tend to
prejudice the [defendant] in the eyes of the grand jury to the
extent that[,] without such a statement[,] the grand jury would
not have returned the indictment."  *Scotland*, 58 Haw. at 477, 572
P.2d at 499 (citation omitted); *e.g.*, *Griffin*, 126 Hawai‘i at 53,
266 P.3d at 461 (upholding indictment where "statements and

responses from [the GJC], while improper, did not prejudice the grand jury proceedings").

Here, the deputy prosecutor was not involved in the alleged misconduct,[4/] no witnesses were present, and the grand jury had not yet been advised of the accusations against Ford—nor the subject matter of those accusations—when the allegedly prejudicial exchange took place. Furthermore, Ford fails to cite anything in the record besides "laughter" in the transcript to support her claim that the grand juror's comments to the GJC "inevitably" biased the rest of the grand jury "to [such an] extent that without such a statement the grand jury would not have returned the indictment." *Scotland*, 58 Haw. at 477, 572 P.2d at 499. Indeed, as the Circuit Court noted in FOF 5, the grand juror at issue here limited her responses to the GJC's questions and did not elaborate as to *why* she disliked Ford, nor did she assert a personal opinion regarding the strength of the State's case against Ford, Ford's culpability, or a personal desire for the grand jury to return an indictment on the charges against Ford. Without more, the amount of time the grand jury had served together and the appearance of laughter on the record in response to the grand juror's statements does not require a conclusion of prejudice. *See, e.g., United States v. Lamantia*, 59 F.3d 705, 710 (7th Cir. 1995) ("[A]s a matter of law[,] a conclusion of prejudice based on one juror's raising his eyebrows at another, which is the sum total of 'pack'-like conduct alleged by any juror, simply cannot stand."); *Hohman v. State*, 669 P.2d 1316, 1319-20 (Alaska Ct. App. 1983) (holding that the trial court did not err in refusing to dismiss the indictment because there was no evidence showing that the biased grand juror's prejudice was shared by other grand jurors).

The FOFs filed by the Circuit Court when it rejected Ford's Motion to Dismiss the Indictment for Grand Juror Misconduct demonstrate that the court understood the laughter to

---

[4/]    Ford does not challenge, and we are therefore bound by, the Circuit Court's FOF 6, in which it found that "[t]he [S]tate . . . played no role in the events at issue[; t]he brief discussion at issue occurred between the grand juror and the [GJC]." See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 303 n.10, 141 P.3d 459, 476 n.10 (2006).

have been more innocent than Ford contends. We review these pre-trial FOFs for clear error. *Ramos-Saunders*, 135 Hawai'i at 302, 349 P.3d at 409 (citations omitted).

In this case, Ford does not challenge FOF 3, which states that the Circuit Court "reviewed both the transcript and the tape of the grand jury . . . and has considered the words spoken, the tone of voices used, and [the] demeanor of persons appearing on the tape." And as neither the video nor audio recordings of this grand jury proceeding are included in the record on appeal, we defer to the trial court's assessment of that evidence below. *See In re Doe*, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005) ("The appellate courts will give due deference to the right of the trier of fact 'to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced.'" (quoting *State v. Lubong*, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App. 1994))). Based on this evidence, the Circuit Court found that the "grand juror gave no specific reason for her general opinion that she did not like . . . Ford," and that "[s]ome or most of the laughter may have been generated as a response to the grand juror's tone of voice, not by the content of her representations." *Cf. State v. Layton*, 53 Haw. 513, 516, 497 P.2d 559, 561-62 (1972) (reversing dismissal of indictment where the record was silent as to the basis for dismissal).

After close examination of the transcript of the grand jury proceeding that is included in the record before us on appeal, we conclude that Ford has presented no reasonable factual foundation for—at the very least—suspecting that the grand jurors who actually deliberated in the instant case were improperly influenced by statements made at the beginning of the grand jury hearing.[5] On the record before us, we cannot say that FOF 5 is clearly erroneous, and Ford has not provided us with sufficient

---

[5] *See, e.g.*, *State v. Murphy*, 538 A.2d 1235, 1242 (N.J. 1988) (holding that the continued presence of a possibly biased grand juror did not warrant dismissing the indictment under state law because, *inter alia*, "the assignment judge who entertained the motion to dismiss the indictment carefully weighed the evidence concerning the bias or prejudice . . . and the possible consequences of the improper procedures, including any damaging discussions between the remaining grand jurors and the [potentially-biased] grand juror" before ruling).

evidence of prejudice. *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring) ("[A] violation must be clearly established before dismissal may be contemplated[, for t]he grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."). Moreover, we agree with the Circuit Court's finding in FOF 7 that the evidence actually presented to the grand jury—testimony about the details of the undercover operation (by Officer Le) and the test results identifying the baggie's contents as containing meth (by Criminalist Shinsato)—constitutes "sufficient evidence for the grand jury to have found probable cause to support the return of an indictment against" Ford. *Layton*, 53 Haw. at 516, 497 P.2d at 561 ("There is a presumption that an indictment was found by [the] grand jury upon sufficient evidence . . . and the burden rests on him who asserts that it did not to prove it." (citation and internal quotation marks omitted)).

The Circuit Court's FOFs, which we uphold for the reasons stated above, support its conclusions that "[it could ] not find proof of prejudice against [Ford] arising in the grand jury from the brief discussion at issue[,]" and that "the brief discussion at issue here does not clearly appear to have improperly influenced the grand jury." Accordingly, Ford has failed to make a "strong showing" that the Circuit Court abused its discretion when it denied Ford's motion to dismiss the indictment, *Hinton*, 120 Hawai'i at 273, 204 P.3d at 492 (quoting *Wong*, 97 Hawai'i at 517, 40 P.3d at 919), and Ford's first point of error therefore fails.

> B.   The Circuit Court did not err by failing to give the trial jury an unrequested instruction on the procuring agent defense because Ford failed to adduce credible facts constituting the defense during her trial.

Ford's second argument on appeal is that the Circuit Court erred in failing to instruct the trial jury, *sua sponte*, on the "procuring agent defense." This instruction would have informed the jury that "a person who acts only on behalf of the

buyer," i.e., a procuring agent, "cannot be found guilty of distributing [an] unlawful drug because the act of 'buying' falls outside the definition of 'to distribute.'" Haw. Pattern Jury Instructions - Criminal 7.17 (2009). A trial court's failure to give an *unrequested* jury instruction will only result in a vacated conviction if (1) that failure caused the substantial rights of the defendant to be affected adversely, thereby constituting plain error, and (2) "there is a reasonable probability that the error contributed to [the defendant's] conviction, *i.e.*, the error was *not harmless beyond a reasonable doubt*." *Taylor*, 130 Hawai'i at 204-05, 307 P.3d at 1150-51 (quoting *State v. Nichols*, 111 Hawai'i 327, 338, 141 P.3d 974, 985 (2006)) (internal quotation marks omitted).

Here, there was no credible evidence of facts that would support the procuring agent defense. Ford, in fact, testified to the opposite. Nevertheless, even if we accept for the sake of argument that the Circuit Court's failure to provide the unrequested procuring agent defense instruction adversely affected Ford's substantial rights and therefore constitutes plain error, "it shall be a basis for reversal . . . only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt." *Taylor*, 130 Hawai'i at 208, 307 P.3d at 1154. In light of the evidence and Ford's own argument at trial that she wanted to make a sale to the officer, "there is no reasonable possibility that the omission of [the procuring agent defense] instruction contributed to [Ford's] conviction." *Id.* Accordingly, we reject Ford's second point of error.

C.    The evidence presented at trial was sufficient to support the jury's unanimous guilty verdict.

In Ford's third point of error on appeal, she contends that there was insufficient evidence to support her conviction because she "believed the material in the packets was bunk and not methamphetamine, [and that, therefore, she] could not knowingly distribute methamphetamine." *See* Haw. Rev. Stat. § 712-1240.8(1) ("A person commits the offense of methamphetamine

12

trafficking in the second degree if the person knowingly distributes methamphetamine in any amount."). Thus, Ford essentially argues that the prosecution failed to present direct evidence to contradict her trial testimony that she did not know that the crystalline substance Officer Le purchased from Amina contained meth. However, after carefully reviewing the evidence "in the strongest light for the prosecution," *State v. Lee*, 90 Hawai'i 130, 134, 976 P.2d 444, 448 (1999) (quoting *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992)), we disagree.

As the State observes, "[Ford's] claim relies on an assumption that the jury was required to have[,] or should have[,] believed her." But it is not for the appellate court to second-guess the jury, which, as fact finder, is charged with "draw[ing] all reasonable and legitimate inferences and deductions from the evidence," including the testimony of witnesses presented at trial. *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65 (citing *Lono v. State*, 63 Haw. 470, 473-74, 629 P.2d 630, 633 (1981)).

In this case, the jury's verdict demonstrates that it "reject[ed Ford's] claim that she was not aware that the material in the packets was meth[, which] indicates [that] the fact finder simply did not believe the testimony by [Ford]," and instead the jury chose to draw its conclusion from the circumstantial evidence presented. *Eastman*, 81 Hawai'i at 141, 913 P.2d at 67 ("Given the difficulty of proving the requisite state of mind by direct evidence in criminal cases, proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient." (citing *Batson*, 73 Haw. at 254, 831 P.2d at 934)). The evidence at Ford's trial established that Ford was present when Officer Le made his undercover buy, agreed to get Officer Le "40 of clear," which she understood to mean $40 of meth, assured Officer Le that she would not get him fake product, and handed the packet containing meth to Officer Le after he paid Amina for it. This constitutes sufficient evidence to support the jury's verdict.

13

V.    CONCLUSION

For the foregoing reasons, we affirm the November 27, 2013 Judgment of Conviction and Sentence, entered in the Circuit Court of the First Circuit, convicting Ford of Methamphetamine Trafficking in the Second Degree.

DATED:   Honolulu, Hawai'i, September 25, 2015.


On the briefs:

Jeffrey A. Hawk
(Hawk Sing & Ignacio)
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

14